(C. D. 143)

NICHOLS COPPER CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 11, 1939)

*Jerome G. Clifford* (*George W. Israel* of counsel); *Sullivan & Cromwell*, associate counsel (*William Piel, Jr.*, of counsel), for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

*James L. Gerry* filed a brief as *amicus curiae*.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of copper ore imported from Cuba. The tax or duty levied thereon was at the rate of 4 cents per pound on the copper contained in said ore, and it was imposed by the collector of customs at the port of New York allegedly under section 601 (c) (7) of the Revenue Act of 1932.

It is claimed in the protest that—

* * * The said copper ore, being a product of Cuba, is free of duty and free under the Internal Revenue Act of 1932, in accordance with Section 316 of the Tariff Act of 1930, and Section 601–A of the Revenue Act of 1932. Copper ore was free of duty under the Act of 1907 and comes within the reciprocal treaty between the United States and Cuba, concluded on December 11, 1902. * * *

Since there was no Tariff Act of 1907, what was evidently intended was the act of 1897.

When this case was first called on May 9, 1938, the plaintiff offered no evidence in support of its claim, but submitted the case on the official papers. On such record a decision was rendered by this court

adverse to the contention of the plaintiff (*Nichols Copper Co.* v. *United States*, C. D. 26).

The case is again before us as the result of a rehearing granted both to the plaintiff and the defendant, the latter contending that this court was without jurisdiction for the reason that no duty or tax had been paid on said merchandise under said section 601 (c) (7) of the Revenue Act of 1932, the entry being a warehouse entry.

At the rehearing, held on December 14, 1938, the plaintiff offered in evidence, without objection on the part of the Government, three exhibits, to wit: Exhibit 1, a collector's receipt showing payment of tax on the withdrawal from the warehouse of a quantity of the imported ore. Exhibit 2, a collector's receipt showing payment of the customs fee. Exhibit 3, a stipulation made and entered into by and between counsel for the respective parties hereto, which reads as follows:

IT IS HEREBY STIPULATED AND AGREED, by and between the counsel for the plaintiff and the Assistant Attorney General for the United States that for all the purposes of this cause the following facts are admitted.

1. The shipment of copper ore involved in this case is a product of the soil of the Republic of Cuba.

2. As shown by "The Foreign Commerce and Navigation of the United States," an official Government publication prepared for the years 1900 to 1903 in the Bureau of Statistics of the Treasury Department, and for subsequent years in the Bureau of Statistics of the Department of Commerce and Labor, the following quantities of Cuban copper ore were imported into the United States from Cuba during the following fiscal years ending June 30:

|      | Tons  |
|------|-------|
| 1900 | 8     |
| 1901 | 179   |
| 1902 | 204   |
| 1903 | 15    |
| 1904 | 9,593 |

As shown by the same official publication, during these same fiscal years the following quantities of lead were imported into the United States from Cuba:

|      | Pounds |
|------|--------|
| 1900 | None   |
| 1901 | 14, 389 |
| 1902 | 1, 900 |
| 1903 | 1, 083 |
| 1904 | None   |

As shown by the same official publication, during these same fiscal years, there were no importations into the United States from Cuba of zinc in ore state, the importations from Cuba of unwrought zinc consisting solely of blocks, pigs, and old metal.

3. The shipment of copper ore involved in this case contains no lead or zinc.

Dated, New York, N. Y., December 14th, 1938.

Upon the record thus made the case was again submitted.

The question at issue is whether copper ore imported from Cuba, and being the product of the soil of that country, is subject to the tax of 4 cents per pound on the copper contained therein under section 601 (c) (7) of the Revenue Act of 1932, which, so far as here pertinent, reads as follows:

Copper-bearing ores and concentrates * * * 4 cents per pound on the copper contained therein * * *.

It will be noted that section 601 (a) provides that:

. In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States *unless treaty provisions of the United States otherwise provide.* [Italics ours].

The Cuban reciprocity treaty of December 11, 1902, is clearly a treaty which "otherwise" provides. Article I thereof contains, among other things, the following:

During the term of this convention, * * * all articles of merchandise being the product of the soil or industry of the Republic of Cuba which are now imported into the United States free of duty, shall continue to be so admitted by the respective countries free of duty.

Not only did paragraph 629 of the Tariff Act of 1897, which was in effect at the time of the enactment of said treaty, accord free entry to copper ore, but such ore was similarly accorded free entry under paragraph 544 of the Tariff Act of 1909, paragraph 461 of the Tariff Act of 1913, paragraph 1556 of the Tariff Act of 1922, and paragraph 1658 of the Tariff Act of 1930.

There can be no question but that the tax imposed by said section 601 (c) (7) of the Revenue Act of 1932 is a duty in the tariff sense. Any doubt in this respect is removed by the following language of section 601 (b) of said act:

(b) The tax imposed under subsection (a) shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act * * *.

In *United States* v. *Domestic Fuel Corp. et al.*, 21 C. C. P. A. 600, T. D. 47010, the United States Court of Customs and Patent Appeals said (at page 613):

* * * It seems appropriate to take notice of the fact that our reciprocity treaty with Cuba is the only treaty of that nature existing between the United States and any foreign country, and it has been the uniform practice of the Congress in all tariff measures passed since the ratification of that treaty to recognize it in express language and by specific sections of the several acts.

Thus section 316 of the Tariff Act of 1930 reads:

Nothing in this Act shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1.

It is true that in the case of *Faber, Coe & Gregg (Inc.)* v. *United States*, 19 C. C. P. A. 8, T. D. 44851, the appellate court held that an excise stamp tax imposed under section 400 of the Revenue Act of 1926 on certain Cuban cigars in addition to the regular tariff duties applicable thereto, was an additional tax on "imported merchandise subsequent to its importation and prior to its entering into consumption," and therefore not subject to the provisions of the Cuban Reciprocity Treaty of 1902. But in our opinion that decision is inapplicable to the instant merchandise for the reason that, while the tax imposed by said section 601 (c) (7) is a duty, it is not an additional duty because copper ore was free of duty at the time the Cuban Reciprocity Treaty was enacted and has remained free of duty ever since, whereas in the cited case the involved cigars and tobacco were on the dutiable list at the time of the enactment of said treaty and have remained dutiable ever since.

To hold that the instant copper ore is subject to the tax of 4 cents per pound on the copper contained therein under said section 601 (c) (7) of the Revenue Act of 1932 would deprive such ore of the preferential treatment to which it is entitled under the Cuban Reciprocity Treaty of 1902 and the Cuban Trade Agreement Act of August 24, 1934.

Moreover, in said case of *Faber, Coe & Gregg (Inc.)* v. *United States*, in quoting article IX of the Cuban Reciprocity Treaty of 1902, the appellate court called attention to the fact that it was entered into by the high contracting parties—

with full knowledge of the imposition by the laws of the United States of internal-revenue taxes on cigars and other products produced in the United States, and the application of such laws and taxes to like products imported into the United States from foreign countries, subsequent to their importation.

On the other hand, section 601 (c) (7) of the Revenue Act of 1932, imposing the copper tax, specifically requires that said tax on the articles therein mentioned "shall apply only with respect to the importation of such articles."

Finally, section 400 of the Revenue Act of 1926 contained no reservation with respect to existing treaty provisions of the United States which otherwise provide, as does section 601 (a) of the Revenue Act of 1932.

On all the facts and the law applicable thereto we hold that the copper ore constituting the imported merchandise at bar is not subject to the provisions of said section 601 (c) (7) of the Revenue Act of 1932, as alleged by the plaintiff. That claim is therefore sustained and judgment will be rendered accordingly.